UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JENKINS,<br><br>    Plaintiff,<br><br>v.<br><br>SANGER POLICE DEPARTMENT, et al.,<br><br>    Defendants. | Case No. 1:25-cv-00544-KES-BAM<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE A FIRST AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ON COGNIZABLE CLAIM<br><br>(Doc. 1)<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff James Jenkins ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983 and state law. Plaintiff's signed complaint, filed May 8, 2025, is currently before the Court for screening. (Doc. 1.)

**I.    SCREENING REQUIREMENT AND STANDARD**

The Court screens complaints brought by persons proceeding *pro se* and *in forma pauperis*. 28 U.S.C. § 1915(e)(2). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

1

1  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
2  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*
3  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as
4  true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,
5  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

6  The court must construe a *pro se* litigant's complaint liberally. *See Haines v. Kerner*, 404
7  U.S. 519, 520 (1972) (per curiam).  The court may dismiss a *pro se* litigant's complaint "if it
8  appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which
9  would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017).
10 However, "a liberal interpretation of a civil rights complaint may not supply essential elements of
11 the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257
12 (9th Cir. 1997) (internal quotation marks and citation omitted).

13 To survive screening, Plaintiff's claims must be facially plausible, which requires
14 sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable
15 for the misconduct alleged. *Iqbal,* 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*
16 *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully
17 is not sufficient, and mere consistency with liability falls short of satisfying the plausibility
18 standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

19 **II.    PLAINTIFF'S ALLEGATIONS**

20 Plaintiff brings this action against the Sanger Police Department, Fresno Police
21 Department, John Zanoni, Fresno County Sheriff, Officer Daniel Ruby #M177, and Officer
22 Daniel Saldana #P1881 ("Defendants").  (Doc. 1.)  Plaintiff asserts five causes of action: (1)
23 Violation of Fourth Amendment – Unlawful Arrest and Search (42 U.S.C. § 1983), (2) Violation
24 of Fourth Amendment – Excessive Force (42 U.S.C. § 1983), (3) Violation of First Amendment –
25 Retaliation (42 U.S.C. § 1983), (4) Intentional Infliction of Emotional Distress, and (5) Violation
26 of California Civil Code § 52.1 (Bane Act).

27 As relief, Plaintiff seeks (1) a declaratory judgment that Defendants' conduct violated
28 Plaintiff's rights, (2) compensatory damages for physical injuries, emotional distress, and

property loss, (3) punitive damages against Officer Daniel Ruby and Officer Daniel Saldana, (4) an order expunging or sealing all records referencing Plaintiff's August 1, 2024 traffic stop, arrest, citation, or related proceedings, (5) attorneys' fees and costs, (6) injunctive relief to prevent further harassment from Defendants, (7) an order directing the return of Plaintiff's safety baton, and (8) an order prohibiting Defendants from further interference with Plaintiff's familial relationships, access to legal counsel, or essential maintenance services. (*Id.* at 11.)

Plaintiff states that since 2020 he has peacefully demonstrated outside the Sanger Police Department, Fresno Police Department, Fresno County Sheriff's Office, and the Federal Bureau of Investigation Building on multiple occasions "to raise public awareness of systemic racial profiling and law enforcement brutality." (*Id.* ¶ 1.) Plaintiff alleges that "[a]s a direct consequence of these constitutionally protected activities," Plaintiff has been "subjected to a continuing pattern of retaliatory and discriminatory conduct by Defendants—acting under color of law—including pretextual traffic stops, warrantless searches, excessive force, and other forms of harassment." (*Id.* ¶¶ 1, 3.)

Plaintiff describes the incidents as follows. Plaintiff alleges that sometime in October 2022, while driving past the Sanger Police Department, he was "followed and tailgated" by Sanger Police Department Officer Daniel Ruby. (Doc. 1 ¶ 14.) Plaintiff states that when he confronted Officer Ruby, Ruby called Plaintiff a racial slur ("Nigga"), denied following him, and claimed his supervisor was on the phone. (*Id.*) Plaintiff further alleges that he reported this incident to a sergeant, who "dismissed the complaint" and stated that "he was on the phone and heard a different version" of the incident. (*Id.* ¶ 14.)

The next incident occurred on January 23, 2023. On that date, Plaintiff alleges that he visited the Sanger Police Department to obtain a complaint form against Officer Ruby. (*Id.* ¶ 15.) Plaintiff states that he parked nearby to fix his radio. (*Id.*) Plaintiff alleges that Officer Ruby then approached Plaintiff's parked vehicle, falsely claimed that he pulled Plaintiff over for tinted taillights and windows, and demanded Plaintiff's license. (Doc. 1 ¶ 15.) Plaintiff refused to provide his license because he "was parked and had committed no crime." (*Id.*) Plaintiff alleges that Officer Ruby returned multiple times, threatening to arrest Plaintiff. At that point a second

1 officer arrived, and Officer Ruby handcuffed Plaintiff after he stepped out of his vehicle. (*Id.* ¶
2 16.) Plaintiff alleges that the second officer then searched Plaintiff's vehicle without consent,
3 found a safety baton, and had Plaintiff's car towed against his wishes. (*Id.*) Plaintiff states that
4 "[d]uring transport, Plaintiff, handcuffed and in pain, fell out of the police vehicle, hitting his
5 head and shoulder, injuries that persist today." (*Id.* ¶ 17.) As a result of this incident, Plaintiff
6 was charged with violating California Penal Code §§ 22210 (possession of a baton) and 148(a)(1)
7 (resisting arrest). (Doc. 1 ¶ 17.) Both charges were dismissed on December 18, 2024. (*Id.*)

8 The next incident occurred on March 31, 2024. On that date, Plaintiff alleges that he was
9 driving home when he was followed by an unnamed Sanger Police officer. (*Id.* ¶ 18.) The
10 unnamed officer made a U-turn to attempt to pursue Plaintiff. (*Id.*) Plaintiff states that the officer
11 stopped him on the basis that he lacked a front license plate and requested his license. (*Id.*)
12 Plaintiff states that he complied and was released, but the officer refused to provide his name and
13 badge number despite two requests by Plaintiff. (Doc. 1 ¶ 18.)

14 The final incident occurred on August 1, 2024. On that date, Plaintiff alleges that he was
15 driving westbound on State Route 180 in Fresno County when he observed a law-enforcement
16 helicopter "repeatedly circling above and tracking his movements." (*Id.* ¶ 20.) Plaintiff alleges
17 that he exited the highway, went to a smoke shop, then kept travelling westbound on McKinley
18 Avenue. (*Id.*) Plaintiff states that after he "safely merged into the right lane," "[w]ithout
19 warning, a marked Fresno Police Department patrol unit accelerated past surrounding traffic and
20 activated its emergency lights to initiate a traffic stop." (*Id.*) Plaintiff describes the traffic stop as
21 follows:

> [Fresno Police Department Officer] Daniel Saldana (#P1881), accompanied by a second uniformed officer, approached Plaintiff's vehicle on the driver's side. Despite the absence of any articulable suspicion beyond a minor window-tint infraction and a missing front license plate, Officer Saldana forcefully struck the driver's window with his closed fist and demanded Plaintiff's driver's license and registration. As Plaintiff reached to unlock the door, Officer Saldana gripped Plaintiff's left arm, twisted it behind his back, shoved him against the patrol car, and applied handcuffs. At the time, Plaintiff was recording the encounter on his cellphone; without consent, Officer Saldana snatched the device from Plaintiff's right hand, manipulated the controls to terminate and delete the recording, and placed the phone atop the Plaintiff's vehicle.

(*Id.* ¶ 21.)

Plaintiff alleges further that three additional officers arrived and conducted a "unwarranted search" of Plaintiff's vehicle, "removing personal effects and placing them on the sunroof while engaging in jocular banter." (Doc. 1 ¶ 22.) Plaintiff states that "[a]t no point did any Defendant obtain Plaintiff's consent, seek a warrant, or articulate a lawful justification for the vehicle search." (*Id.*) Plaintiff was cited under California Vehicle Code § 26708(a)(1) (tinted windows) and § 5200(a) (failure to display front license plate). (*Id.* ¶ 23.) On April 15, 2025, the citation was dismissed for failure of the arresting officer to appear. (*Id.* ¶ 24.)

As a result of these incidents, Plaintiff alleges that he has experienced physical injury, mental anguish, and emotional distress in addition to isolation from family and friends, obstruction of maintenance services for his home and vehicle, and interference with his ability to obtain legal advice. (*Id.* ¶¶ 25-29.) He alleges that he has "experienced a deliberate and systematic effort by Defendants to isolate him from his family and friends," that "Defendants have interfered with Plaintiff's ability to obtain essential maintenance services for his home and vehicle," and that "Defendants have obstructed Plaintiff's access to legal counsel making it difficult for him to secure consistent and effective legal representation." (*Id.*) Plaintiff asserts that "[t]his interference appears calculated to punish Plaintiff for his activism and further disrupt his daily life." (Doc. 1 ¶ 28.)

**III.   DISCUSSION**

Plaintiff's complaint fails to state a cognizable claim under 42 U.S.C. § 1983. Because he is proceeding pro se, Plaintiff will be granted leave to amend his complaint to the extent that he can do so in good faith. To assist Plaintiff, the Court provides the pleading and legal standards that appear relevant to his claims.

**A.  Joinder**

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2);

*Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1350. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff asserts claims against five separate defendants based on one incident where Officer Ruby is alleged to have called Plaintiff a racial slur and three unrelated traffic stops. (Doc. 1 ¶ 14-25.) These incidents have spanned approximately two years, from October 2022 to August 1, 2024. (*Id.*) Plaintiff alleges that these incidents relate to an overarching "pattern of harassment, racial profiling, unlawful arrest, excessive force, and emotional distress inflicted upon Plaintiff due to his activism against police brutality and racial injustice." (*Id.* ¶ 2.) But the complaint contains no allegations that show these incidents are related. Furthermore, Plaintiff brings claims against two separate municipal police departments, police officers from different police departments, and the Fresno County Sheriff John Zanoni in the same action. Merely because in each incident Plaintiff was pulled over by police officers while driving does not make each incident related. Plaintiff may not bring in one case all unrelated claims he has arising from different incidents arising on different dates, spanning multiple years, involving different defendants and different municipal entities. Unrelated claims involving multiple defendants belong in different suits. Fed. R. Civ. P. 20(a)(2).

In any amended complaint, Plaintiff should show that Defendants are properly joined under Rule 20, such that "any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" **and** "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a); 20(a)(2). If Plaintiff's amended complaint continues to improperly join claims and defendants, the Court will choose which cognizable claims, if any, that Plaintiff may pursue.

**B. Supervisor Liability**

Insofar as Plaintiff is attempting to sue Defendant John Zanoni, Fresno County Sheriff, or any other defendant, based solely upon his supervisory role, he may not do so. Supervisors are not liable under Section 1983 for the actions of their employees under a theory of

6

1   *respondeat superior*. *Iqbal*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235
2   (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

3   Supervisors may be held liable only if they "participated in or directed the violations, or
4   knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040,
5   1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets
6   in motion a series of acts by others which the actor knows or reasonably should know would
7   cause others to inflict constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir.
8   2009) (internal quotation marks and citation omitted). Supervisory liability may also exist
9   without any personal participation if the official implemented "a policy so deficient that the
10  policy itself is a repudiation of the constitutional rights and is the moving force of the
11  constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir.
12  1991) (internal quotations marks and citation omitted), abrogated on other grounds by *Farmer v.
13  Brennan*, 511 U.S. 825 (1970). Additionally, when a defendant holds a supervisory position, the
14  causal link between such defendant and the claimed constitutional violation must be specifically
15  alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d
16  438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of
17  supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*,
18  673 F.2d 266, 268 (9th Cir. 1982).

19  Plaintiff's allegation that two backup officers "arrived on scene, witnessed Saldana's
20  actions, and participated in an illegal search, yet none intervened to stop or mitigate the excessive
21  force" and that "[t]heir collective inaction demonstrates deliberate indifference and supervisory
22  failure" is insufficient to establish supervisory liability. (Doc. 1 ¶ 38.) Plaintiff has not alleged
23  that Sheriff Zanoni was personally involved in the constitutional deprivation, that there is a
24  sufficient causal connection between Sheriff Zanoni's purported wrongful conduct and the
25  constitutional violation, or that there is any named policy that meets the *Redman* standard.

26  To the extent Plaintiff alleges John Zanoni, Fresno County Sheriff is liable under 42
27  U.S.C. 1983 for the incidents listed in the complaint, Plaintiff fails to state a claim against Sheriff
28

7

Zanoni. In any amended complaint, Plaintiff must establish that Sheriff Zanoni is liable under Section 1983.

**C. Section 1983 Claims (Claims 1-3)**

Plaintiff raises three claims under 42 U.S.C. § 1983. These claims assert that Plaintiff suffered violations of his Fourth Amendment rights against unlawful arrest and search (Claim 1), violations of his Fourth Amendment rights against excessive force (Claim 2), and violations of his First Amendment right against retaliation (Claim 3).

Pursuant to 42 U.S.C. § 1983, any person who, "under color of" state law, subjects any person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." "To state a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law." *Campbell v. Washington Dep't of Soc. Servs.*, 671 F.3d 837, 842 n.5 (9th Cir. 2011).

While "municipalities and other local government units . . . [are] among those persons to whom § 1983 applies," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (alteration in original) (quoting *Monell*, 436 U.S. at 694 and *Polk County. v. Dodson*, 454 U.S. 312, 326 (1981)). Sheriff and Police Departments "cannot be held liable [for the actions of their employees] under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 591. Instead, the constitutional injury must occur during the execution of an official "policy or custom." *Id.* at 694. "A plaintiff may assert *Monell* liability based on: (1) an official policy; (2) a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity'; (3) the act of an 'official whose acts fairly represent official policy such that the challenged action constituted official policy'; or (4) where "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" *Bustamante v. County of Shasta*, No. 2:23-cv-01552-TLN-DMC, 2024 WL 3673529, at *2 (E.D. Cal. Aug. 6,

2024) (quoting *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008)).

Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell*, 436 U.S. 658; *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (internal quotation marks and citation omitted).

### 1. Fourth Amendment – Unlawful Arrest and Search

Plaintiff brings a claim for unlawful arrest and search against Officer Daniel Ruby and Officer Daniel Saldana on the basis that (1) on January 23, 2023, Officer Ruby lacked probable cause or reasonable suspicion to detain or arrest Plaintiff because he was parked and not committing a crime, (2) on August 1, 2024, Officer Saldana lacked probable cause to detain Plaintiff and search his vehicle for a minor traffic violation, and (3) on August 1, 2024, Defendants conducted a warrantless, non-consensual search of Plaintiff's vehicle, seized his phone, and deleted a video of the traffic stop in violation of the Fourth Amendment. (Doc. 1 ¶¶ 30-35.) Upon screening of the complaint, Plaintiff states a claim only to the extent that he alleges Officer Saldana seized and searched his cell phone in violation of the Fourth Amendment.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Rubio*, 727 F.2d 786, 796–97 (9th Cir. 1983).

///

### *i.   Probable Cause*

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). Probable cause "exists when under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the person arrested] had committed a crime." *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). The fact that Plaintiff's charges were later dismissed does not negate the fact that probable cause existed at the time of the traffic stop. *See Adams v. Kraft*, 828 F. Supp. 2d 1090, 1102 (N.D. Cal. 2011) (holding that "[a]lthough the criminal case against Plaintiff was later dismissed on both charges, Plaintiff suffered no constitutional violation if probable cause existed at the time of his arrest.")

Plaintiff's complaint alleges that the traffic violations were so minor as to fail to constitute probable cause to arrest, detain, or search Plaintiff in the course of the January 23, 2023 and August 1, 2024 traffic stops. (Doc. 1 ¶¶ 31-33.) This fails to state a claim under the Fourth Amendment.[1] The traffic stops repeatedly concern Plaintiff's illegal window-tint and missing front license plate. (*Id.* ¶¶ 15, 18, 21). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). There is no requirement that the traffic violation be serious. *See Pennsylvania v. Mimms*, 434 U.S. 106, 107, (1977) (finding a traffic stop and vehicle search permissible under the Fourth Amendment where police officers on routine patrol observed defendant driving an automobile with an expired license plate). Nor does it matter that Plaintiff was already stopped when Officer Ruby approached his vehicle on January 23, 2023. *United States v. Willis*, 431 F.3d 709, 715 (9th Cir. 2005) ("The fact that [the stopped

---

[1] Plaintiff's complaint does assert, in a conclusory manner, that "[o]n January 23, 2023, Officer Ruby lacked probably cause or reasonable suspicion to detain or arrest Plaintiff, who was parked and not committing a crime" and "[o]n August 1, 2024, Officer Saldana lacked probably cause to detain Plaintiff and search his vehicle for a minor traffic violation." (Doc. 1 ¶¶ 31, 32.) The Court need not credit Plaintiff's conclusory statements of law. *Iqbal*, 556 U.S. at 679. Further, as stated above, these claims are improperly joined.

1  individual] had parked his car at the point that the officers detained him does not affect our
2  analysis.")  A police officer who has lawfully stopped a vehicle for a traffic violation is within the
3  bounds of the Fourth Amendment to order the driver to step out of the vehicle even if "the officer
4  had no reason to suspect foul play from the particular driver at the time of the stop, there having
5  been nothing unusual or suspicious about his behavior."  *Mimms*, 434 U.S. at 109.  Furthermore,
6  the Supreme Court has "flatly dismissed the idea that an ulterior motive might serve to strip the
7  agents of their legal justification."  *Whren*, 517 U.S. at 812.

8   Accordingly, Plaintiff fails to show that the traffic stops violate the Fourth Amendment
9  because of a lack probable cause.

   ii.  *Pretextual Stop*

11  Next, Plaintiff alleges that the August 1, 2024 traffic stop was pretextual and the
12  subsequent search of Plaintiff's vehicle violated his Fourth Amendment rights against
13  unreasonable searches and seizures.  (Doc. 1 ¶ 34.)

14  The subjective motivation of the officers in conducting a traffic stop does not negate
15  objectively justifiable behavior under the Fourth Amendment.  *Whren*, 517 U.S. at 812.  Here, a
16  reasonable officer, given the circumstances, would have conducted the traffic stop based on a
17  window-tint violation and missing front plate.  (Doc. 1 ¶ 21.)  Nor does Plaintiff's bare allegation
18  that a helicopter was circling Plaintiff or "tracking" Plaintiff's movements constitute proof of
19  objective unreasonableness.  (*Id.* ¶ 20.)

20  Accordingly, Plaintiff fails to show that the August 1, 2024 traffic stop violates the Fourth
21  Amendment on the basis that it was pretextual.

   iii.  *Automobile Search and Cell Phone Video*

23  Third, Plaintiff alleges that Defendants' "warrantless, non-consensual search of Plaintiff's
24  vehicle, removing personal items and seizing his phone, without any exigent circumstances or
25  plain-view justification" constitute an unreasonable search and seizure in violation of the Fourth
26  Amendment.  (Doc. 1 ¶ 33.)

27  Under the general rule, "searches typically must be conducted pursuant to a warrant issued
28  by an independent judicial officer."  *United States v. Faagai*, 869 F.3d 1145, 1149 (9th Cir.

11

2017). However, an exception to this general rule includes the "automobile exception," under which a warrantless search of a vehicle is permitted "if there is probable cause to believe that the vehicle contains evidence of a crime." *Faagai*, 869 F.3d at 1150 (internal quotation marks and citation omitted). Plaintiff has not alleged sufficient factual material to show that under the totality of the circumstances, there was no probable cause to believe that evidence of a crime or contraband would be found in the vehicle.

The Fourth Amendment generally requires a warrant prior to police searching a cell phone, even one seized incident to an arrest. *Riley v. California*, 573 U.S. 373, 401 (2014). None of the "case-specific exceptions" that may justify a warrantless search of a particular phone apply here, including "the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury." *Id.* at 402.

Sister circuits have found plaintiffs to plausibly state a claim for violation of the Fourth Amendment based on allegations that a police officer searched a cell phone and deleted a cell phone video during an arrest or traffic stop. *See Williams v. City of Grand Rapids*, 672 F. Supp. 3d 395, 414-15 (W.D. Mich. 2023) (finding a genuine dispute of material fact as to whether the officer searched plaintiff's phone in violation of the Fourth Amendment where the officer stopped and allegedly erased plaintiff's video recording); *Hornback v. Czartorski*, No. 3:20-CV-703-RGJ, 2022 WL 3084592, at *16 (W.D. Ky. Aug. 3, 2022) (same); *Gray v. City of Denham Springs*, No. CV 19-00889-BAJ-EWD, 2021 WL 1187076, at *8 (M.D. La. Mar. 29, 2021) (finding a plausible Fourth Amendment claims where officers physically removed a plaintiff's cellphone from his hand without a warrant or exigent circumstances, stopping the recording, and attempting to delete the video). Other courts in the Ninth Circuit have held similarly. *See, e.g.*, *Oquendo v. City of Boise*, No. 1:15-CV-322-BLW, 2017 WL 874569, at *9 (D. Idaho Mar. 3, 2017) (allowing a Fourth Amendment claim to survive summary judgment where an officer allegedly removed plaintiff's cell phone from her hand, searched it, and deleted video of the traffic stop).

Liberally construing the allegations in the complaint, Plaintiff states a plausible claim for violation of the Fourth Amendment for Officer Saldana allegedly performing a warrantless search

and seizure of Plaintiff's cell phone.

### 2. Fourth Amendment – Excessive Force

Plaintiff brings a claim for excessive force against Officer Daniel Ruby and Officer Daniel Saldana on the basis that (1) Officer Ruby used excessive force by handcuffing Plaintiff unnecessarily, failing to assist him during transport, and causing Plaintiff to fall and sustain injuries to his head and shoulder, and (2) Officer Saldana used excessive force by twisting Plaintiff's arm, "forceful[ly] shove[d]" him against the patrol car, and forcibly cuffed him. (Doc. 1 ¶¶ 37-40.)

"An objectively unreasonable use of force is constitutionally excessive and violates the Fourth Amendment's prohibition against unreasonable seizures." *Torres v. City of Madera*, 648 F.3d 1119, 1123–24 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1032 (2012). The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). To determine whether a use of force was objectively reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing government interests at stake." *Id.* at 8. This "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In analyzing the nature and quality of the intrusion, a court must "first assess the quantum of force used to arrest the plaintiff by considering the type and amount of force inflicted." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (internal quotation marks and brackets omitted). "The mere application of handcuffs during the course of an arrest does not, in and of itself, give rise to a section 1983 claim for excessive force. The right to make an arrest carries with it the right to use 'some degree of physical coercion.'" *Dillman v. Tuolumne Cnty.*, No. 1:13-CV-00404 LJO, 2013 WL 1907379, at *7 (E.D. Cal. May 7, 2013) (quoting *Graham*, 490 U.S. at 396).

13

Second, a court balances the government's countervailing interests. This involves considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Plaintiff fails to provide sufficient detail surrounding the circumstances of the January 23, 2023 or August 1, 2024 incidents, including Plaintiff's behavior before and during the traffic stops, whether Plaintiff actively resisted arrest, the actions by Plaintiff or others that caused Plaintiff to fall out of the police vehicle and sustain injuries, or whether Plaintiff was compliant with the instructions of officers. To survive screening, Plaintiff's claims must state sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678 (quotation marks omitted). Accordingly, the Court cannot conclude that, even if the facts in Plaintiff's complaint are true, "whether the force employed was greater than is reasonable under the circumstances." *Drummond*, 343 F.3d at 1058.

The Court finds that Plaintiff has not stated a cognizable excessive force claim. In any amended complaint, Plaintiff must include sufficient factual allegations to show that the Defendants' use of force was objectively unreasonable. Further, the January 23, 2023 and August 1, 2024 incidents are not properly joined.

### 3. First Amendment – Retaliation

Plaintiff brings a claim for retaliation against Officer Ruby, Sanger Police Department, Officer Saldana, Fresno Police Department, and John Zanoni, Fresno County Sherrif on the basis that "Defendants were aware of Plaintiff's activism prior to each traffic stop and search" and "'[b]ut for' Plaintiff's activism, the stop, search, and seizure would not have occurred." (Doc. 1 ¶ 42.)

Retaliation by a state actor for the exercise of a constitutional right is actionable under Section 1983, even if the act, when taken for different reasons, would have been proper. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977). To state a claim for First Amendment retaliation against a government official, a plaintiff must allege that (1) he engaged in constitutionally protected activity, (2) as a result, he was subjected to adverse action

14

by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016).

Plaintiff fails to state a cognizable claim for retaliation. Plaintiff makes conclusory assertions that the stops were "undertaken in direct retaliation for Plaintiff's constitutionally protected demonstrations, as shown by the pretextual nature of the infractions and the level of force deployed," and that "'[b]ut for' Plaintiff's activism, the stop, search, and seizure would not have occurred." (*Id.* ¶¶ 42, 44.) While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The Court need not give legal conclusions the presumption of truth. *Iqbal*, 556 U.S. at 679.

          i.    *Officer Ruby, Officer Saldana, and John Zanoni, Fresno County Sheriff*

Plaintiff does not allege a substantial causal relationship between Plaintiff's protests and the traffic stops. Plaintiff states that his "repeated, high-profile protests at the Sanger PD, Fresno PD, Fresno County Sheriff's Office, and FBI Building are undisputed protected First Amendment activity," and that "Defendants were aware of Plaintiff's activism prior to each traffic stop and searched—evidenced by helicopter surveillance and repeated targeting at known protest locations." (Doc. 1 ¶ 42.) However, Plaintiff does not allege that Officer Ruby, Officer Saldana, or Sheriff Zanoni[2] were aware of or involved in Plaintiff's demonstrations outside the Sanger Police Department, Fresno Police Department, Fresno County Sheriff's Office, or the Federal Bureau of Investigation Building. Nor does Plaintiff allege sufficient factual matter to plausibly show that there is any causal relationship between his First Amendment activity, which occurred as early as May 2020, and the traffic stops. "The Court cannot infer a 'substantial causal relationship' merely because protected activity occurred and an enforcement action followed." *Temple of 1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1024 (N.D. Cal. 2022).

If Plaintiff chooses to amend his complaint, he must proffer enough facts to state a

---

[2] The Court has already addressed Plaintiff's failure to state a claim regarding supervisor liability as it relates to Sheriff Zanoni. *See supra* at 6-7.

plausible claim that Officer Ruby and Officer Saldana acted in retaliation as a result of Plaintiff's political demonstrations. However, Plaintiff may not improperly join claims.

> ii.  *Sanger Police Department and Fresno Police Department – Monell Liability*

Plaintiff alleges that the Sanger Police Department, Fresno Police Department, and Fresno County Sheriff John Zanoni "failed to train or supervise their officers, resulting in a pattern of retaliation against Plaintiff." (Doc. 1 ¶ 45.) Plaintiff also states that "Defendants' efforts to isolate Plaintiff from his family, friends, and legal advisors, as well as their interference with his access to essential services, constitute further retaliation intended to suppress his protected speech and activism." (*Id.* ¶ 46.) Plaintiff further alleges that he has suffered emotional distress and fear of future harassment. (*Id.* ¶ 47.)

Claims for failure to train have been found cognizable under Section 1983 when stated against municipalities. *Harris*, 489 U.S. at 388; *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). Plaintiff must show that "the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *Id.* "In other words, to impose liability, Plaintiff is required to show that the inadequate training a*ctually caused the constitutional violation* and that the violation *would have been avoided* had the employees been properly trained." *Martinez v. Beard*, No. 1:14-CV-00405-AWI, 2014 WL 5305883, at *7 (E.D. Cal. Oct. 15, 2014) (emphasis added).

Plaintiff names the Sanger Police Department and the Fresno Police Department as defendants but does not identify any actions either entity took to violate his rights. Nor does Plaintiff make specific factual allegations of conduct by Defendants that amounted to a failure to train its employees. *See id.*

///
///
///
///

16

**D. State Law Claims**

   *1. Government Claims Act*

California's Government Claims Act[3] requires that a claim against the State[4] or its employees "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Super. Ct. of Kings Cty. (Bodde)*, 32 Cal. 4th 1234, 1245 (Cal. 2004); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. *Bodde*, 32 Cal. 4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff fails to allege compliance with the Government Claims Act in that he submitted a timely claim and his claim was rejected. Absent compliance, Plaintiff will be unable to proceed with state law claims.

   *2.   Intentional Infliction of Emotional Distress*

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales*, 567 F.3d at 571 (quotation marks omitted); *Tekle v. United States*, 567 F.3d 554, 855 (9th Cir. 2007). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Corales*, 567 F.3d at 571;

---

[3] This Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 741–42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

[4] " 'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

17

*Tekle*, 511 F.3d at 855.

Plaintiff fails to state a cognizable state law claim for intentional infliction of emotional distress. In any amended complaint, Plaintiff must make factual allegations regarding Defendants' conduct sufficient to support a finding of extreme and outrageous conduct.

### 3. *Violation of California Civil Code § 52.1 (Bane Act)*

California Civil Code section 52.1, known as the Bane Act, authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 949 P.2d 941, 942 (1998). A claim under section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Id.* at 944. The essence of a Bane Act claim is that a defendant, through threats, intimidation, or coercion, tried to or did prevent the plaintiff from doing something that he had the right to do under the law or to force the plaintiff to do something that he was not required to do under the law. *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 472 (Cal. Ct. App. 2007) (quotation marks omitted).

Plaintiff fails to state a cognizable state law claim under the Bane Act. In any amended complaint, Plaintiff must make factual allegations regarding Defendants' conduct sufficient to support a finding of threats, intimidation, or coercion.

## IV.   CONCLUSION AND ORDER

The Court has screened Plaintiff's complaint and concludes that (1) joinder is improper under Rule 18(a) and 20(a)(2), and (2) Plaintiff only states a cognizable claim against Officer Saldana that Officer Saldana seized, searched, and deleted a video from Plaintiff's cell phone in violation of the Fourth Amendment (Claim 1). Plaintiff fails to state any other cognizable claim against any other Defendant.

As Plaintiff is proceeding *pro se*, the Court will grant Plaintiff an opportunity to amend her complaint to cure the identified deficiencies to the extent he is able to do so in good faith. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding

only on the cognizable claim identified by the Court, he may file a written notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims. The Court will then recommend that the remaining claims and defendants be dismissed from this action

If Plaintiff wishes to amend the complaint, Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). If Plaintiff's amended complaint continues to improperly join claims and defendants, the Court will choose which cognizable claims, if any, that Plaintiff may pursue. Plaintiff may not join unrelated claims.

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File a first amended complaint, curing the deficiencies identified by the Court in this order; or
   b. Notify the Court in writing that he does not wish to file a first amended complaint and he is willing to proceed only on his claim against Officer Saldana that Officer Saldana seized, searched, and deleted a video from Plaintiff's cell phone in violation of the Fourth Amendment (Claim 1); and

///

3. **If Plaintiff fails to comply with this order, the Court will recommend dismissal of this action, without prejudice, for failure to obey a court order and for failure to prosecute**.

IT IS SO ORDERED.

Dated: __November 14, 2025__      /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE